**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES EVERETT SHELTON, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABSOLUTE HOME MORTGAGE CORPORATION<br><br>Defendant. | CIVIL ACTION FILE NO. 2:22-cv-1934 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**ABSOLUTE HOME MORTGAGE CORPORATION'S MOTION TO DISMISS**

Plaintiff, James Everett Shelton ("Mr. Shelton"), hereby responds in opposition to Defendant Absolute Home Mortgage Corporation's ("Absolute Home Mortgage") Motion to Dismiss (ECF No. 10) and states the following.

**I.   INTRODUCTION**

While styled as a Fed. R. Civ. P. 12(b)(6) motion, Absolute Home Mortgage has really filed a motion to strike Mr. Shelton's class allegations, as it simply claims that Mr. Shelton, without any discovery, doesn't have sufficient information to support a class action claim. It is not surprising that Absolute Home Mortgage has attempted to convert its motion to one under 12(b)(6), as "[m]otions to strike are generally viewed with disfavor[] and will usually be denied unless the allegations in the pleading have no possible relation to the controversy[] and may cause prejudice to one of the parties." *Luciano v. Teachers Ins. & Annuity Ass'n of Am. — Coll. Ret. Equities Fund*, Civil Action No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at \*9 (D.N.J. Apr. 7, 2022). "In a putative class action suit, a plaintiff is generally entitled to

1

discover information relevant to Rule 23's class certification requirements." *McPeak v. S-L Distribution Co.*, Civ. No. 12-348, 2014 U.S. Dist. LEXIS 123728, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014). Thus, "a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.* "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Id.* (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir.2011)); s*ee also John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings").

Absolute Home Mortgage ignores these principles and asks this Court to prematurely rule on class certification. Absolute Home Mortgage's motion demonstrates its true purpose, which is to create issues in hopes that it will not have to respond for violating Mr. Shelton's and the Class members' rights under the TCPA and should be denied.

## II.     BACKGROUND

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

Mr. Shelton's a local resident with a residential telephone number of 484-626-XXXX, which is on the National Do Not Call Registry and has been registered continuously for more than one year prior to the calls at issue. *See* Complaint (ECF No. 1) at ¶ 21. Despite that, Mr. Shelton received telemarketing calls from Absolute Home, or a call center retained on their behalf, on April 27 and 28, 2022. *Id.* at ¶ 25 and 28. The calls resulted in the Defendant inquiring about Mr. Shelton's credit score and location. *Id.* at ¶ 33-34.

The Caller ID for the first two calls from the Defendant to Mr. Shelton was (970) 296-9428. *Id.* at ¶ 40.  Other individuals have complained about getting spam calls from that number. *See* https://800notes.com/Phone.aspx/1-970-296-9428 (Last Visited May 16, 2022). *Id.* at ¶ 41. Indeed, it was clear to the Plaintiff following the first call that Absolute was using automated dialing equipment to make calls, as Mr. Shelton's first call lasted for almost 30 seconds with Mr. Shelton saying "hello" multiple times with no response. As such, the automated dialing equipment Absolute uses to make calls made more calls than their telemarketing representatives were available to receive calls. *Id.* at ¶¶ 28-29. Due to the *en masse* nature of automated telemarketing, the Plaintiff has brought this matter as a putative class action on behalf of the following class

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*Id.* at ¶ 50.

### III.   LEGAL STANDARD

Courts have observed that "the standard of review [on a motion to strike class allegations] is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6)." *Schilling v. Kenton Cty., Ky.,* No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *11-12 (E.D. Ky. Jan. 27, 2011) (citing *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 U.S. Dist. LEXIS 95993, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010)).  Accordingly, a defendant seeking to strike class allegations "has the burden of demonstrating from the face of the [plaintiff's] complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiff[] may be able to prove." *Id.* (citing *Jimenez,* 2010 U.S. Dist. LEXIS 95993, at *3).  In other words, striking class

allegations is appropriate "only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23[.]" *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (quoting *McPeak v. S-L Distribution Co., Inc.*, 2014 U.S. Dist LEXIS 123728, 2014 WL 4388562 at *4 (D.N.J. Sept. 5, 2014) (citing with approval *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011))).

IV. **ARGUMENT**

    A. **Striking Class Allegations without any Discovery is Premature**

Third Circuit precedent prevents the relief sought by Absolute Home Mortgage. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"). Despite this ruling, Absolute Home Mortgage claims that the Plaintiff will not be able to meet the elements of Rule 23, but the Plaintiff's proposed Class is not inherently overbroad as implied by the Motion.

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694-MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018) (quoting *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1280 (11th Cir. 2002) (remedial statutes "must be construed liberally in order to best serve Congress' intent")).

First, the proposed class must be adequately defined and clearly ascertainable by reference to objective criteria. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357–358 (4th Cir. 2014); William B. Rubenstein, 1 *Newberg on Class Actions* § 3:3 (5th ed.); *Manual for Complex Litigation, Fourth* § 21.222 (Fed. Judicial Ctr. 2004) (same). Conversely, a class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted). Contrary to what Defendant argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions:

- Did Absolute Home Mortgage make calls to numbers on the National Do Not Call Registry?

- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

First, Absolute Home Mortgage claims that the issue of whether or not it had consent to contact people will create mini-trials. But, "[c]ourts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings); *See also*

*MSP Recovery Claims, Series LLC v. Auto Club Ins. Ass'n*, No. 21-11606, 2021 U.S. Dist. LEXIS 217221, at *16 (E.D. Mich. Nov. 10, 2021) ("While the Court might ultimately agree with Defendants' assessment, it will not strike the class allegations before Plaintiffs have the opportunity to engage in discovery and before class certification has been requested.")

Absolute Home Mortgage's argument focuses on a potential affirmative defense of consent (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). The Plaintiff's class definition is almost the same here as it was in *Rosenberg* with respect to the Do Not Call Class Members. Here, Plaintiff's class definition is:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

*See* ECF No. 1 at ¶ 50.  In *Rosenberg* it was:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more calls in a twelve-month period; (b) promoting Defendants' products or services; (c) to their residential telephone number; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

*See* Civil Action No. 19-10661-NMG, ECF No. 13 at ¶67. The Court should reach the same conclusion as in *Rosenberg*.

Even though the Mr. Shelton does not believe that Absolute Home Mortgage obtained the appropriate prior express written consent for its calls or "established business relationship" with the called party because it was a current customer (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting. Indeed, *Zarichny v. Complete Payment Recovery Servs.,* 80 F. Supp. 3d 610 (E.D. Pa. 2015), relied upon by Absolute Home Mortgage suffered from this same drafting issue, "The putative TCPA class is comprised of those people who received CPRS telephone calls **without the recipient's 'prior express consent'**". *Id.* at 625 (E.D. Pa. 2015) (emphasis added).

Second, Absolute Home Mortgage claims that the Plaintiff has not established that class members have all suffered the same injury. However, the Plaintiff has alleged everything necessary to frame discovery. His class definition requires that (a) individuals all received calls within the TCPA's statute of limitations of four years[1] (b) that they received "telemarketing calls" (c) that they were made by, or on behalf of the Defendant and (d) that more than one call occurred in a 12-month period. Nothing more is required for a TCPA claim. *See* 47 U.S.C. 227(c)(5). As such, the Defendant's claim that discovery *may* reveal factual differences between class members is insufficient to "dismiss" the class allegations as requested. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"). Here, discovery may very well reveal that Absolute Home Mortgage has engaged in cold calling, itself or through a third party, which is ideally suited for class certification in a TCPA case. *See Vance v. DIRECTV, LLC*, No. 5:17-CV-179, 2022 U.S. Dist. LEXIS 140518 (N.D.W. Va. Aug. 1, 2022) (Counsel for the Plaintiff is appointed as one of several class counsel in TCPA National Do Not Call Registry case where vendor of the Defendant engaged in cold call telemarketing). As it is not impossible from the face of the complaint that this matter won't be certified, it should proceed to discovery.

Third, Absolute Home Mortgage claims that the Plaintiff cannot meet the numerosity requirement. Of course, without the aide of discovery, it is impossible for a TCPA plaintiff to

---

[1] TCPA claims are governed by the four-year federal statute of limitations in 28 U.S.C. §1658(a).

9

know how many individuals on the National Do Not Call Registry that a defendant called, that's what discovery will reveal. Many courts, including this Court, have found "the outbound call list [to be] reasonably calculated to identify the number of recipients of calls made during the class period, which is relevant to Rule 23 requirements[.]" *Frey v. Frontier Util. Northeast Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620, at *5 (E.D. Pa. Apr. 13, 2020) (citation omitted).

Despite that, the Plaintiff has still made several allegations that make clear that *en masse* nature of the calling. The Caller ID for the first two calls from the Defendant to Mr. Shelton was (970) 296-9428. *See* ECF No. 1 at ¶ 40.  Other individuals have complained about getting spam calls from that number. *See* https://800notes.com/Phone.aspx/1-970-296-9428 (Last Visited May 16, 2022). *Id.* at ¶ 41. Indeed, it was clear to the Plaintiff following the first call that Absolute was using automated dialing equipment to make calls, as Mr. Shelton's first call lasted for almost 30 seconds with Mr. Shelton saying "hello" multiple times with no response. As such, the automated dialing equipment Absolute uses to make calls made more calls than their telemarketing representatives were available to receive calls. *Id.* at ¶¶ 28-29. The full extent of the telemarketing conduct will be revealed through discovery.

Fourth, Absolute Home Mortgage asserts that there is no commonality because of potential issues of consent to make its telemarketing calls. However, Absolute Home Mortgage does not demonstrate that *any* of the calls were made with consent. Merely mentioning that discovery will reveal that you have an affirmative defense to some class member claims is insufficient to strike class allegations, as appellate courts have ruled in TCPA cases. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification

decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance"); *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented").

As such, most courts to consider the issues raised by Absolute Home Mortgage at the pleading stage of a TCPA case have rejected those arguments. *See e.g. Mattson v. New Penn Fin., LLC,* No. 3:18-cv-00990-YY, 2018 U.S. Dist. LEXIS 218627, at *5-6 (D. Or. Nov. 6, 2018) ("Courts in this circuit repeatedly have denied motions to strike class allegations prior to discovery as premature."); *Ahmed v. HSBC Bank USA, National Ass'n*, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413, at *1 (C.D. Cal. Jan. 5, 2018) (denying reconsideration of a decision rejecting a motion to strike class allegations in TCPA class action); *Brown v. DIRECTV, LLC*, 2014 U.S. Dist. LEXIS 195473, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) (denying defendant's motion to strike TCPA class allegations as premature); *Iniguez v. CBE Group*, 969 F. Supp. 2d 1241, 1248 (E.D. Cal. 2013) (finding the sufficiency of TCPA class allegations are better addressed in a motion for class certification); *Wood v. Capital Vision Servs., LLC,* No. 20 C 4584, 2021 U.S. Dist. LEXIS 219013, at *7 n.2 (N.D. Ill. Nov. 12, 2021) (Denying motion to strike in TCPA case holding "In *Vann v. Dolly*, 2020 U.S. Dist. LEXIS 31678, 2020 WL 902981 (N.D. Ill. Feb. 25, 2020), the court found class allegations to be facially overbroad because the class definition included "all individuals who were employed" during a timeframe, while the plaintiffs alleged harms suffered by those employed as "helpers." 2020 U.S. Dist. LEXIS 31678,

[WL] at *5. That is the type of facial overbreadth properly considered on a motion to strike class allegations. Here, that there *may* be some individuals who fit into the exceptions or exemptions, there is no evidence of that (yet) and so the claim is not facially overbroad."). The same is true for this TCPA claim.

Indeed, the case relied upon by Absolute Home Mortgage for this proposition is *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995). However, this case from nearly 30 years ago and courts have "widely criticized [its] logic," instead affirming the proposition that "the question of consent may rightly be understood as a common question." *Savanna Grp., Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *52 (N.D. Ill. Jan. 4, 2013). Of course, *Forman* was a district court opinion decided nearly 20 years prior to the Third Circuit's decision in *Landsman & Funk PC*.

Finally, Absolute Home Mortgage claims that Mr. Shelton has not met the requirement of Fed. R. Civ. P. 23(b) because a class action is not superior to individual actions and that Mr. Shelton cannot meet the predominance and commonality requirements. With respect to the latter, the Plaintiff had addressed those arguments above. Discovery will reveal both the scope of the calling conduct at issue and if Absolute Home Mortgage has any adequate consent defenses, of which it has not demonstrated any. With respect to superiority, The TCPA, its allocation of statutory damages in an amount not to exceed $1,500 and its lack of a mechanism to award attorneys' fees, effectively means that it is not economically viable for class members to pursue claims against defendants on an individual basis.

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. Most of those who received these unwanted calls would not seek relief on an individual basis because the cost of proceeding on an individual basis

would not be practical or economical given the potential size of individual awards. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (noting the unlikely possibility that a consumer would pay the $400 federal court filing fee to bring a $500 claim and emphasizing that all 65 TCPA cases brought in the Seventh Circuit since 2005 were class actions). As a result, a class action is undoubtedly superior to individual litigation. *See Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *16 (N.D. Ill. Feb. 11, 2014) (finding superiority met, "since the statutory recovery is the greater of $500 or "actual monetary loss," individual plaintiffs have a low incentive to bring a lawsuit on their own behalf.") (citation omitted); *Krakauer*, 311 F.R.D. at 400 ("[g]iven the relatively small statutory damages, *see* 47 U.S.C. § 227(c)(5), the class members likely have little interest in controlling the litigation in this case.") (citations omitted); 7A Wright, Miller & Kane, Federal Practice and Procedure (2d ed. 1986) § 1777 (a class action enables those who have small claims that might not be worth litigating individually to combine their resources and vindicate their rights collectively).

Second, a class action consumes far fewer resources than binary litigation. As the *Krakauer* district court wrote, "given the large number of class members and claims, class-wide adjudication of the claims would be more efficient" piecemeal litigation. *Krakauer v. Dish Network L.L.C.,* 311 F.R.D. 384, 400 (M.D.N.C. 2015). Thus, "[a]djudicating these claims in one forum would provide flexibility, control, and consistency that would not exist with individual litigation." *Id.*

Finally, and perhaps most importantly, certification of this class will effectuate the important social goals underlying the TCPA — a fact the Fourth Circuit strongly emphasized in *Krakauer*. There, the Court observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme for determining if a violation occurred, whether a

defense is available, and what the damages ought to be." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019) at 659. The Court went on to emphasize the societal benefits of allowing class actions like this one, noting that "[t]he TCPA was enacted to solve a problem. Simply put, people felt almost helpless in the face of repeated and unwanted telemarketing calls." 925 F.3d at 663 (citation omitted). To combat this serious problem, "Congress responded with an Act [the TCPA] that featured a combination of public and private enforcement, allowing suits both to enjoin intrusive practices and deter future violations through money damages." *Id.*

As described above, each Class member has a claim of $500 per violative call, with the potential for $1,500 per call if defendants' conduct is found to be knowing and willful. Since the TCPA is not a fee shifting statute, individual actions are not feasible even if the Court were to treble damages upon a finding of willfulness, as attorneys' fees would greatly exceed the recovery. The class action mechanism is clearly superior to other available methods for the litigation of this matter.

## V. **CONCLUSION**

Absolute Home Mortgage's Motion highlights why it is improper to rule on class certification before allowing the parties to conduct discovery. Absolute Home Mortgage seeks to deny the Class members relief not based on facts or evidence, but instead on its speculation and conjecture. This Court should deny Absolute Home Mortgage's premature and improper use of Rule 12(b)(6).

Plaintiff,
By his attorney

*s/ Anthony Paronich*
Anthony Paronich
**Paronich Law, P.C.**
350 Lincoln St, Suite 2400
Hingham, MA 02043
Phone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Pro Hac Vice*

Dated: August 9, 2022

## CERTIFICATE OF SERVICE

On this August 9, 22, the undersigned filed the foregoing on the Court's CM/ECF system.

*s/ Anthony Paronich*
Anthony Paronich